IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FERNANDO ALVAREZ-CARVAJAL,<br><br>Defendant. | Case No. 3:18-CR-30183-NJR-4 |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is the Motion to Suppress the Contents of Electronic Surveillance filed by Defendant Fernando Alvarez-Carvajal (Doc. 117). Alvarez-Carvajal seeks to suppress all wire, oral, or electronic communications in which he participated in, or which he was referred to directly or indirectly, from three phone numbers. He also seeks to suppress any GPS information for these phone numbers. For the reasons set forth below, the motion is denied.

### BACKGROUND

In May 2016, FBI agents began investigating local drug sales in Alton, Illinois (Doc. 120-1). That investigation led to the identification of Defendant Edward Akwaboah as a supplier of crystal methamphetamine (*Id.*). In June 2018, a cooperating witness began working with police to make a series of recorded calls and text messages to Akwaboah (*Id.*). Through these communications, agents learned that Akwaboah was communicating with an unknown person regarding his own source of supply (*Id.*).

On June 14, 2018, agents sought court authorization to tap Akwaboah's phone,

(510) 302-5527, to identify Akwaboah's suppliers, the scope and structure of the drug trafficking organization, identities of other customers, and the location of stash houses, among other things. Now-retired Chief District Judge Michael J. Reagan authorized the wiretap (Doc. 120-3).

During this first period of interception, agents were able to identify others involved in the drug trafficking organization supplying Akwaboah, including Jesus Alvarez-Duarte, Luis Alvarez-Duarte, and Defendant Fernando Alvarez-Carvajal (Doc. 119 at p. 3). Judge Reagan later authorized the continued wiretapping of Akwaboah's phone, as well as two phones used by Luis Alvarez-Duarte (Doc. 120-6). During this second period, agents monitored calls between Akwaboah and Jesus Alvarez-Duarte, who was using Mexico-based telephone number 52-6677679177 (Doc. 119 at pp. 3-4). On December 6, 2018, agents sought authority from the U.S. District Court for the Eastern District of Virginia to tap Jesus Alvarez-Duarte's Mexican phone, and that authorization was granted by U.S. District Judge Claude M. Hilton (Doc. 120-9). As a result of these wiretaps, Defendant Alvarez-Carvajal was intercepted on Akwaboah's phone, one of Luis Alvarez-Duarte's phones, and Jesus Alvarez-Duarte's phone.

On December 11, 2018, the Grand Jury returned the indictment in this case charging Defendant Alvarez-Carvajal with conspiracy to distribute and possess, with the intent to distribute, methamphetamine, a Schedule II controlled substance, marijuana, a Schedule I controlled substance, and heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 846 (Doc. 1).

On September 5, 2019, Defendant Alvarez-Carvajal filed the instant motion to

suppress (Doc. 117). Defendant argues that the wiretaps should not have been authorized because agents did not meet their burden to prove the wiretaps were necessary and that the Government failed to minimize the interception of communications not otherwise subject to interception. As a result, he argues, the Court should suppress "all wire, oral, or electronic communications in which Alvarez-Carvajal and any other person or persons participated in, or in which Alvarez-Carvajal was referred to directly or indirectly, and all evidence derived from the information obtained from the electronically intercepted communications which has been in any manner used in obtaining the indictment against Alvarez-Carvajal." (*Id.*). He also seeks to exclude any GPS information obtained from the three phones at issue (*Id.*).

The Government responded on September 19, 2019, arguing that Defendant lacks standing to challenge any intercepted communications of which he was not a party, that the use of wiretaps was the only way that the investigation was reasonably likely to identify the group supplying Akwaboah and to gather evidence against them, and that the Government properly minimized the interception of communications unrelated to the investigation (Doc. 119).

#### EVIDENTIARY HEARING

The Government asserts that Defendant's motion to suppress can be decided without an evidentiary hearing because Defendant has raised no significant factual dispute, nor has he challenged the veracity of the affidavits supporting the Government's wiretap applications. The Court agrees and finds that no hearing is necessary to dispose of the motion. *See United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004) ("Because the

purpose of an evidentiary hearing is to resolve material factual disputes among the parties, a hearing is not required in the absence of such disputes.").

**DISCUSSION**

**I.     Standing**

As an initial matter, the Government argues that Defendant does not have standing to challenge any intercepted communications to which he was not a party.

Under 18 U.S.C. § 2518(10)(a), only an "aggrieved person" may challenge a wiretap, and § 2510(11) defines an "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." Here, Defendant was intercepted over the three telephone numbers and, therefore, is an aggrieved person as to those communications. He cannot, however, move to suppress any other communications, even if they referred to him or led to his indictment. *See United States v. Thompson*, 944 F.2d 1331, 1339 (7th Cir. 1991) (defendant lacked standing to seek suppression of calls to which he was not a party, as interception of those calls did not intrude upon his Fourth Amendment rights). Thus, the Court considers Defendant's motion to suppress only as to those communications of which he was a party.

**II.    Necessity of Wiretap Evidence**

Defendant next argues that the wiretaps should not have been authorized because they were not necessary as required by 18 U.S.C. § 2518(1)(c).

The procedure for interception of wire, oral, or electronic communications is set forth in 18 U.S.C. § 2518. The statute requires the Government's application for electronic

or wire surveillance to provide, among other things, a "full and complete statement as to whether or not other investigative procedures [1] have been tried and failed or [2] why they reasonably appear to be unlikely to succeed if tried or [3] to be too dangerous." *United States v. Maggard*, 865 F.3d 960, 966 (7th Cir. 2017), *cert. denied sub nom. Bell v. United States*, 138 S. Ct. 2014, 201 L. Ed. 2d 269 (2018). This so-called "necessity requirement" compels the government to show that it considered other methods of investigation and to explain why those methods are inadequate for one or more of these reasons. *Id.*

"Despite its name, the necessity requirement 'was not intended to ensure that wiretaps are used only as a last resort in an investigation, but rather that they are not to be routinely employed as the initial step in a criminal investigation.'" *Id.* at 966-67 (quoting *United States v. Mandell*, 833 F.3d 816, 821 (7th Cir. 2016)). For this reason, the Government's burden in applying for a wiretap "is not great," and the district court is only required to review the Government's use of other investigative procedures prior to obtaining a wiretap in a "practical and common-sense fashion." *Id.* at 967.

Indeed, "the government need not demonstrate that prosecution would be impossible without it or that evidence possibly sufficient for indictment could not conceivably be obtained through other means." *United States v. McLee*, 436 F.3d 751, 762-63 (7th Cir. 2006). For example, the Seventh Circuit has found a wiretap necessary on the basis that investigators were "having trouble fingering other members of the conspiracy," and that the wiretaps "allowed the government to ascertain the extent and structure of the conspiracy." *Id.* (quoting *United States v. Farmer*, 924 F.2d 647, 652 (7th Cir. 1991) and *United States v. Plescia*, 48 F.3d 1452, 1463 (7th Cir. 1995)).

In this case, Defendant argues that the affidavits submitted with the Government's applications establish that normal investigative procedures did not fail, but rather accomplished the Government's objectives. The affidavits also did not demonstrate that other investigative procedures would fail or would be too dangerous. Specifically, Defendant argues that prior to the first application, the Government had amassed significant information from numerous reliable confidential sources, significant physical surveillance, search warrant executions, many controlled purchases of narcotics, law enforcement data base checks, and analysis of pen register data and telephone call detail records. Defendant claims the "immense amount of information" obtained from these investigative tools renders the wiretaps unlawful and unnecessary. Moreover, each wiretap provided the Government with extensive information, reducing the need for each subsequent wiretap.

In response, the Government acknowledges that it successfully used traditional techniques *in order to demonstrate probable cause* that the targets were committing federal crimes such that a wiretap would be necessary to further the goals of the investigation. The fact that those techniques were used, however, does not eliminate the need for wire interceptions to gather evidence as to the identity of Akwaboah's suppliers. The Government notes that it had no traditional methods available to infiltrate Akwaboah's supply chain; instead, it was necessary to use wiretaps to identify Akwaboah's suppliers and associates, like Defendant.

A review of the FBI and DEA Special Agents' affidavits submitted with the Government's wiretap applications demonstrates that the wire surveillance was

necessary. The affidavits go into great detail explaining the constraints, impracticability, and/or futility of using subpoenas, confidential informants and cooperating witnesses, controlled purchases, undercover agents, interviews of subjects or associates, search warrants and consensual searches, physical surveillance, pole cameras, pen register and telephone toll records, vehicle tracking devices, trash searches, financial investigations, mail cover requests, immigration enforcement, and prior wiretaps. (*See* Doc. 120-1 at pp. 21-42; Doc. 120-4 at pp. 40-66; Doc. 120-7 at pp. 26-46). The affidavits also explain the success or failure of these techniques where they had been employed, their limitations, and the additional information that could be attained if wiretaps were used in conjunction with these techniques.

Based on the affidavits, the Court finds that the use of wiretaps was not the Government's first step in its investigation. Furthermore, the wiretaps were necessary to uncover the size and scope of the conspiracy, as well as the identities of those working with Akwaboah in the drug trafficking organization. *See Farmer*, 924 F.2d at 652. Accordingly, the Court rejects Defendant's argument that Judge Reagan and Judge Hilton abused their discretion in finding that the wiretap applications demonstrated necessity. *See United States v. Zambrana*, 841 F.2d 1320, 1329-30 (7th Cir. 1988) (issuing judge's determination is reviewed for abuse of discretion when challenge is to the necessity of a wiretap).

**II.     Minimization of Communications Not Subject to Interception**

In the alternative, Defendant argues—without pointing to any specific facts—that much of the electronic communications intercepted by the wiretaps should be suppressed

because the Government failed to minimize the interception of communications not otherwise subject to interception, as required by 18 U.S.C. § 2518(5).

The minimization requirement compels the Government to stop monitoring communication once an agent determines it is not relevant to the investigation. *United States v. Mansoori*, 304 F.3d 635, 646 (7th Cir. 2002). "A court assessing the sufficiency of the government's efforts in this regard must ultimately decide whether the steps that agents have taken to minimize the interception of communications unrelated to the investigation were objectively reasonable given the circumstances confronting the agents." *Id.* at 647 (citing *Scott v. United States*, 436 U.S. 128, 137 (1978)). "[R]elevant considerations include the kind and scope of criminal enterprise that the government was investigating, the thoroughness of the government's efforts to ensure that nonpertinent calls will be minimized, the extent to which the government could have foreseen that certain types of conversations would be innocuous and thus subject to minimization, use of code, and the extent to which the authorizing judge oversaw the interception efforts." *Id.* "The standard for minimization is reasonableness." *United States v. Torres*, 908 F.2d 1417, 1423 (7th Cir. 1990).

Here, the Government's efforts to minimize were reasonable. The affidavits in support of the wiretap applications stated that the Government would immediately terminate monitoring when it was determined that the conversation was unrelated to pertinent communications or when none of the target subjects were participants in the conversation, unless the conversation was criminal in nature (*See, e.g.*, Doc. 120-1 at p. 43). Once the conversation was minimized, the agent would only spot check to ensure the

conversation had not turned to criminal matters (*Id.*). Furthermore, the Government intended to minimize the interception of non-relevant electronic communications based on the identities of the sender and recipient and the contents of the message (*Id.*). If the message was non-criminal in nature or privileged, it would not be accessed by other investigators. The Government further provided a plan for minimizing communications in languages other than English (*Id.* at p. 44).

Considering the thoroughness of the steps taken by the Government to minimize the interception of non-pertinent communications during the wiretaps, the lack of reference to any specific communications or facts in Defendant's motion, and the fact that the Government was investigating a drug trafficking conspiracy of an unknown size and scope, the Court finds that the Government's procedures for minimization were reasonable. *See Mansoori*, 304 F.3d at 647 ("[W]here an investigation involves a drug ring of unknown proportion, as in this case, the need to allow latitude to eavesdroppers is close to its zenith.").

## CONCLUSION

For these reasons, the Court **DENIES** the Motion to Suppress the Contents of Electronic Surveillance filed by Defendant Fernando Alvarez-Carvajal (Doc. 117).

**IT IS SO ORDERED.**

DATED: October 31, 2019

*Nancy J. Rosenstengel*

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**