IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br> **Plaintiff,** <br> **v.** <br> **FERNANDO ALVAREZ-CARVAJAL,** <br> **Defendant.** | **Case No. 3:18-CR-30183-NJR-4** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion for Compassionate Release and For Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(2) filed by Defendant Fernando Alvarez-Carvajal. (Docs. 361, 363). Alvarez-Carvajal has also requested the appointment of counsel. (Doc. 362). For the reasons set forth below, the motions are denied.

## BACKGROUND

On December 11, 2018, Alvarez-Carvajal was charged in an eight-count indictment along with five co-defendants. (Doc. 1). Count 1, the only count pertaining to Alvarez-Carvajal, charged that from October 2016 to December 2018, the defendants engaged in a conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine. (Doc. 1). Alvarez-Carvajal's relevant conduct occurred between April 2018 and August 2018 and involved 31 kilograms of methamphetamine in the form of ice. Alvarez-Carvajal delivered ice and/or drug proceeds, stored ice at his residence, and allowed drug proceeds to be deposited into his bank account, which he then withdrew and gave to his son, Jesus Alvarez-Duarte, in Mexico. (Doc. 208, ¶ 32). Alvarez-Carvajal

did this at the direction of Alvarez-Duarte, who was a leader of the drug trafficking organization and remains a fugitive to this day. (*Id.* ¶ 35).

Alvarez-Carvajal exercised his right to a jury trial and was found guilty on February 20, 2020. (Doc. 194). In the Presentence Investigation Report ("PSR"), U.S. Probation calculated Alvarez-Carvajal's advisory guideline range as 360 months to life based on an adjusted offense level of 42 and a criminal history category of I. (*Id.* ¶ 87). The offense level included a two-level enhancement for maintaining premises for the purpose of manufacturing or distributing a controlled substance because he stored and allowed ice to be stored at his residence, and a two-level enhancement for obstruction of justice based on his false testimony at trial that money he received from a co-defendant was for a legitimate purpose. (*Id.* ¶¶ 45, 48). Alvarez-Carvajal objected to the enhancements. (Doc. 223).

At sentencing, the undersigned overruled Alvarez-Carvajal's objections and agreed with Probation that the applicable guideline range was 360 months to life. (Doc. 283, p. 15). The Court noted that Alvarez-Carvajal's criminal history included a reckless driving conviction, for which he received one criminal history point. (*Id.* p. 18). The Government then argued for a sentence of 300 months, while Alvarez-Carvajal argued for a sentence of 120 months. (*Id.* pp. 20-23).

The Court ultimately imposed a sentence of 240 months, well below the advisory guideline range, finding that a guideline sentence would be greater than necessary to meet the objectives of sentencing, in light of Defendant's age of 49 and his role in the conspiracy. (Doc. 267). Specifically, the undersigned found that the nature and

circumstances of the offense called for lengthy period of incarceration. (*Id.*). However, the advisory guideline range of 360 months to life was the result of the amount of drugs involved and the two enhancements, and because Alvarez-Carvajal exercised his right to trial and thereby sacrificed any offense-level reduction for acceptance of responsibility. (*Id.*). The undersigned further observed that a 240-month sentence was sufficient, but not greater than necessary to meet the goals of incarceration in that it reflected the seriousness of the offense, promoted respect for the law, provided just punishment, promoted specific and general deterrence, and protected the public from further crimes committed by Alvarez-Carvajal. (*Id.*). Importantly, the Court specified that any sentencing disparity when compared to similarly situated individuals was warranted after considering all factors. (*Id.*).

Judgment was entered on September 30, 2020 (Doc. 266), and Alvarez-Carvajal filed a timely notice of appeal on October 7, 2020. (Doc. 269). Alvarez-Carvajal challenged the application of both enhancements to his offense level. (Doc. 320-1). On June 24, 2021, the Court of Appeals affirmed the Court's judgment. (*Id.*).

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c), a district court "may not modify a term of imprisonment once it has been imposed." *See Dillon v. United States*, 560 U.S. 817, 824 (2010). There are narrow exceptions to this rule. *See* § 3582(c). Section 3582(c)(1)(A) permits a court "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights," to reduce an inmate's sentence "after considering the factors set forth in [18 U.S.C.] § 3553(a)," if the court finds

that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Further, § 3582(c)(2) allows a court to reduce the sentence of an inmate who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission. The court must again consider the § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

Effective November 1, 2023, the Sentencing Commission issued a policy statement describing what constitutes extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). These reasons include (1) certain medical circumstances of the defendant, (2) the defendant's age, (3) family circumstances that leave the defendant as the only available caregiver, and (4) that the defendant has been a victim of abuse in prison. U.S.S.G. § 1B1.13(b)(1)-(4). A defendant may also demonstrate "other reasons" by presenting any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). § 1B1.13(b)(5).

## DISCUSSION

### I. Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(2)

Alvarez-Carvajal first contends that Amendment 821 to the U.S. Sentencing Guidelines and § 4C1.1 require a reduction in his sentence. Under Part B of Amendment 821, offenders with zero criminal history points and whose offense did not involve

specified aggregating factors shall receive a two-level decrease in their offense level. U.S.S.G. § 4C1.1. Alvarez-Carvajal argues that, although he was assessed one criminal history point for a misdemeanor reckless-driving conviction, that conviction occurred more than 10 years before the commencement of the instant offense. Thus, it should not have served as the basis for a criminal history point. Once this point is removed, he asserts, he will have zero criminal history points and will qualify as a first-time offender.

Section 4A1.2(c)(1) of the Sentencing Guidelines states that sentences for misdemeanor offenses, including reckless driving, are counted as prior sentences for purposes of computing criminal history only if the "sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days." Any prior sentence "imposed within ten years of the defendant's commencement of the instant offense is counted." § 4A1.2(e)(2).

Alvarez-Carvajal's reckless driving conviction, for which he served one day of confinement and three years of probation, was entered on June 23, 2010. (Doc. 208, p. 10). His relevant conduct in this case occurred between April 2018 and August 2018. Thus, Alvarez-Carvajal's reckless driving sentence was imposed within 10 years of his commencement of the instant offense, meaning the criminal history point was properly imposed.

Because Alvarez-Carvajal's criminal history was properly calculated, he is not a zero-point offender and he is not entitled to a sentence reduction under Amendment 821.

**II. Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A)**

Alvarez-Carvajal next argues that a reduction in his sentence is proper under the

"other reasons" provision of § 1B1.13(b)(5). As noted above, this section provides that an inmate can demonstrate "extraordinary and compelling reasons" for a sentence reduction if he "presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). § 1B1.13(b)(5). Paragraphs (1) through (4) discuss certain medical circumstances of the defendant, the defendant's age (at least 65), family circumstances that leave the defendant as the only available caregiver, and sexual abuse by or at the direction of a correctional officer.

A. *Sentencing Disparities*

Most of the "other circumstances" argued by Alvarez-Carvajal relate to sentencing disparities. First, he references Amendment 833 to the Sentencing Guidelines, which went into effect in November 2025. Amendment 833 "altered U.S.S.G. § 2D1.1(a)(5), specifying base offense level reductions when a defendant receives a mitigating role adjustment under U.S.S.G. § 3B1.2 for being a minimal or minor participant in criminal activity." *United States v. Almanza*, No. 22 CR 151, 2026 WL 578847, at *2 (N.D. Ill. Mar. 2, 2026). Alvarez-Carvajal, while acknowledging that the amendment is not retroactive, argues that had he been sentenced today, his offense level would have been 32 or lower, leading to a guideline range of 121 to 151 months. But Alvarez-Carvajal did not receive a mitigating role adjustment for being a minor participant, so his sentence would not be lower due to Amendment 833. And even if it would, this is not a basis for a sentence reduction now. *See Rutherford v. United States*, 608 U.S. 454, 146 S. Ct. 1320, 1330 (2026)

("When Congress declines to make a sentencing amendment retroactive, the fact that a preamendment sentence is longer than it would have been postamendment is not an extraordinary and compelling reason that warrants a sentence reduction.") (cleaned up).

Alvarez-Carvajal also points to the difference between the sentence he received—240 months—and those of his co-defendants. Of the four other defendants to be sentenced, only one received a higher sentence than Alvarez-Carvajal, and that person was the organizer or leader of the conspiracy. Alvarez-Carvajal claims the only distinguishing factor is the fact that he chose to go to trial.

This argument is contradicted by the chart Alvarez-Carvajal included in his brief, which shows that the organizer/leader received 360 months, while the other three defendants who received lower sentences were either a "limited participant," a "peripheral participant," or had "minimal involvement." (Doc. 361, p. 14). As previously discussed, Alvarez-Carvajal did not play a limited role in the conspiracy. Moreover, a "district court is required by statute to tailor its sentence to the particular defendant before it." *United States v. Hanson*, No. 23-3088, 2024 WL 5134348, at *2 (7th Cir. Dec. 17, 2024) (quoting *United States v. Solomon*, 892 F.3d 273, 279 (7th Cir. 2018)). The Court did that here, explicitly discussing the sentences and potential sentences of his co-defendants and the need to avoid an unwarranted sentencing disparity when determining the proper sentence for Alvarez-Carvajal. (Doc. 283, pp. 24-25). In any event, "arguments about sentencing errors belong on direct appeal . . . or on collateral review under 28 U.S.C. § 2255; they are not extraordinary or compelling reasons for compassionate release." *Id.* (citing *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022)).

Next, Alvarez-Carvajal avers that his 240-month sentence greatly exceeds the national mean and median sentences for comparable drug-trafficking offenses. He argues that the median sentence for offenders with a Criminal History Category of I is 46 months, while the median for Category VI offenders is 125 months—nearly half of his sentence. Because his sentence far exceeds the national mean and median for comparable drug-trafficking offenses, he argues, an extraordinary and compelling reason exists for a sentence reduction.

As argued by the Government, however, this argument ignores the fact that Alvarez-Carvajal's sentence was driven by the amount of drugs involved in the conspiracy, the fact that he obstructed justice by testifying falsely at trial, the fact that he stored and allowed ice to be stored at his residence, as well as the fact that he continued to maintain his innocence throughout sentencing which resulted in him not receiving a three-level reduction for acceptance of responsibility. (Doc. 208, ¶¶ 44-45, 48, 51). Thus, even if Alvarez-Carvajal had been a first-time, non-violent offender, he has not shown that his sentence is grossly disparate to any *similarly situated* defendant. And, again, the Court considered the "need to avoid unwarranted sentencing disparities among Defendants with similar records who are found guilty of similar conduct" when imposing the sentence in this case. (Doc. 283, p. 24). After doing so, the Court departed downward by 120 months from the guideline range to impose a 240-month sentence.

Alvarez-Carvajal has not shown that any sentencing disparities are similar in gravity to those described in paragraphs (1) through (4) of § 1B1.13(b). His motion is therefore denied on this basis.

*B. Methamphetamine Purity*

Alvarez-Carvajal argues that his base offense level of 38 would have only been 34 or 36 if it had been calculated under the "mixture" guideline rather than the "ice" guideline. He claims this would have significantly reduced his guideline range (151 to 188 months for level 34 or 188 to 235 months for level 36). Again, arguments about sentencing errors belong on direct appeal or on collateral review under 28 U.S.C. § 2255, not in a motion for compassionate release. Moreover, Alvarez-Carvajal's argument is premised on a *total* offense level of 34 or 36, not a *base* offense level of 34 or 36. With the addition of two points for storing ice at his residence and two points for testifying falsely at trial, the lowest *total* offense level under his argument would be 38, resulting in a range of 235 to 293 months. The 240-month sentence imposed by the Court is near the low end of that range. This argument fails.

C. *Pandemic and Prison Conditions*

Alvarez-Carvajal next argues that the conditions of confinement he endured during the COVID-19 pandemic, combined with his non-violent offense, minimal criminal history, and documented rehabilitation constitute extraordinary and compelling reasons for a sentence reduction. But if prison conditions during the pandemic—alone or in combination with an inmate's good behavior—were extraordinary and compelling, the Court would be inundated with motions for compassionate release. Instead, "extraordinary and compelling" means reasons that are "especially unusual and convincing." *Rutherford*, 146 S.Ct. at 1330. There is nothing unusual or convincing about the conditions experienced by the majority of inmates during the COVID-19 pandemic.

D. *Reassessment of § 3553 Factors*

Finally, Alvarez-Carvajal asserts that the sentencing landscape has changed since his sentence was imposed in 2020. He references *United States v. Booker* and the Sentencing Commission's 2023 to 2024 amendments to § 1B1.13, and he discusses the evolution of § 3582(c) motions from a rigid three-step process to a "dynamic two-step review," requiring courts to weigh rehabilitation, changed law, and new empirical data together. He further states: "This reform makes § 3553(a) the heart of modern resentencing; eligibility determines access, but § 3553(a) determines justice." (Doc. 361, p. 27).

For Alvarez-Carvajal, the Court's analysis stops at the eligibility phase, as none of the circumstances discussed above, alone or in combination, are extraordinary and compelling reasons for a sentence reduction. Because he has not established that he is eligible for a sentence reduction, the Court need not consider the § 3553(a) factors.

## CONCLUSION

For these reasons, the Motion for Compassionate Release and For Sentence Reduction Pursuant to 18 U.S.C. 3582(c)(2) filed by Defendant Fernando Alvarez-Carvajal (Docs. 361, 363) is **DENIED**. His Motion to Appoint Counsel (Doc. 362) is **DENIED** as moot.

**IT IS SO ORDERED.**

**DATED: October 21, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**